# EXHIBIT "1"

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by NCR Corporation ("NCR"), its predecessors and successors in interest, parents, subsidiaries, affiliated entities and/or persons, members, assigns, past, present or future officers, directors, employees, partners, shareholders, agents, and legal representatives and Plaintiffs (as hereinafter defined in Section 2.3) (together, the "Parties").

### RECITALS

WHEREAS, Plaintiff Christopher Spangler commenced the lawsuit captioned <u>Christopher Spangler, et al. v. National Cash Register Company and Field Solutions, Inc.</u>, Civil Action No. 15-cv-00022-TCB (the "Litigation") in the U.S. District Court for the Northern District of Georgia (the "Court"), asserting claims against National Cash Register Company and Field Solutions, Inc. under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") on behalf of himself and all others "similarly situated" on or about February 3, 2015; and

WHEREAS, Plaintiff filed an Amended Complaint on March 11, 2015, substituting National Cash Register Company with NCR Corporation as the named defendant;

WHEREAS, to date, a total of 34 Plaintiffs, in addition to Named Plaintiff Christopher Spangler, have opted into this lawsuit;

WHEREAS, NCR denied and continues to deny all of the allegations made by Plaintiffs as to liability, damages, penalties, interest, fees, and all other forms of relief, as well as the collective action allegations asserted in the Litigation. Contrary to Plaintiffs' allegations in the Litigation, NCR does not concede the existence of an employment relationship with Plaintiffs; does not concede that it is, or was at any time, a joint employer of Plaintiffs within the meaning of the FLSA; and believes that Plaintiffs were properly compensated for all hours, including hours worked over 40 in a workweek, in accordance with the FLSA. Finally, even if Plaintiffs prevail on the merits and successfully sustain certification of a collective action, Plaintiffs would not be entitled to liquidated damages from NCR because any violations by NCR were not voluntary, deliberate, or intentional;

WHEREAS, the Parties wish to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, the Parties desire to effect a full, complete, final, and binding settlement and compromise of all claims that the Parties may have against NCR that were asserted or could have been asserted in this Litigation.

NOW THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual covenants and promises set forth in this Agreement, agree as follows:

1. **The Conditional Nature of This Agreement.**

    The Parties have agreed to resolve the claims against NCR in the Litigation via this Agreement, but to the extent this Agreement is deemed void, NCR does not waive, but rather expressly reserves, all rights to challenge all claims and allegations in the

24427356v.2

Litigation upon all procedural and factual grounds, including without limitation the ability to challenge continued collective action treatment and/or to assert any and all defenses and privileges as if this Agreement were not reached. Plaintiffs and their counsel agree that NCR retains and reserves these rights, and agree not to take a position to the contrary. This Agreement and the negotiations leading to it shall not be admissible or referenced in any fashion in the Litigation if the Agreement is not approved by the Court and if the Litigation against NCR is not dismissed with prejudice.

2. **Definitions.** The defined terms set forth herein shall have the meanings ascribed to them below.

   2.1   Plaintiffs' Counsel. "Plaintiffs' Counsel" shall mean Morgan & Morgan P.A.

   2.2   Court. "Court" shall mean the United States District Court for the Northern District of Georgia.

   2.3   Plaintiffs. "Plaintiffs" shall refer to the individuals listed in Exhibit A, and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation. Each individual shall be referred to as "Plaintiff" or as "Plaintiffs," when referred to collectively.

   2.4   Fee and Expense Award. "Fee and Expense Award" means the award of fees and expenses as the Court may approve to be paid to Plaintiffs' Counsel for the services they have rendered, and will not exceed Nineteen Thousand, Seven Hundred and Eighty-Seven dollars and Three cents ($19,787.03).

   2.5   Individual Settlement Payment. "Individual Settlement Payment" means the portion of the Net Settlement Proceeds distributable to each Plaintiff.

   2.6   Net Settlement Proceeds. "Net Settlement Proceeds" means the Total Settlement Amount less the Fees and Expense Award, all as approved and awarded by the Court. At this time, the Net Settlement Proceeds are estimated to be Fourteen Thousand, Two Hundred and Twelve dollars and Ninety-Seven cents ($14,212.97).

   2.7   Payroll Tax(es). "Payroll Tax(es)" means the employer's portion of FICA, FUTA, and all other state and federal payroll taxes.

   2.8   Qualified Settlement Fund. "Qualified Settlement Fund" or "QSF" means the account established by the Claims Administrator for the Total Settlement Amount paid by NCR. The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement.

   2.9   Settlement. "Settlement" shall mean the terms and conditions set forth in this Agreement.

2

2.10  Total Settlement Amount.  "Total Settlement Amount" shall mean the total maximum amount of Thirty-Four Thousand Dollars ($34,000.00) that NCR shall pay as a result of this Agreement, exclusive of Payroll Taxes.

3. **No Admission of Liability.**

The Parties agree and acknowledge that this Agreement is the result of a compromise and that NCR does not admit any allegations made against it in any claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, or demands, including the Litigation. Nothing contained in this Agreement, nor any of the acts taken thereunder, shall be deemed or construed as an admission of liability, responsibility, wrongdoing, or violation of any applicable law, statute, ordinance, order, regulation, or constitution of any kind. Further, pursuant to Federal Rule of Evidence 408 and/or any other similar law, statute, ordinance, order, regulation, or constitution of any kind be inadmissible in evidence in any proceeding, except an action or proceeding to approve the Settlement, and/or interpret or enforce this Agreement.

4. **Dismissal of Litigation.**

The Parties agree that within seven (7) days after all Parties have executed this Agreement, they shall file a Joint Motion for Approval of this Agreement and for Dismissal of the Litigation as to NCR with Prejudice, in the form attached hereto as Exhibit C.

5. **Claims Administrator Duties**

Within five (5) calendar days after the Court dismisses the Litigation against NCR with Prejudice, NCR shall retain a Claims Administrator to administer the settlement process as provided herein. The Parties, and their counsel, agree to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement, including exchanging such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax state and federal reporting obligations.

6. **Consideration.**

6.1  The Settlement in this Lawsuit shall have two components: (1) the Individual Settlement Payments, which shall be paid from the Net Settlement Proceeds, and (2) the Fee and Expense Award. Each of these components is included in the Total Settlement Amount. In consideration for the promises and agreements made in this Agreement, NCR shall pay the Total Settlement Amount to the Claims Administrator in the timeframes set forth in this Agreement.

6.2  In consideration for the promises that Plaintiffs have made in this Agreement, NCR agrees to pay the Total Settlement Amount in accordance with the schedule outlined below and in Exhibit A. A portion of the Total Settlement Amount is subject to applicable statutory tax withholdings or other deductions as required by law. Other than

3

the Payroll taxes as described in Section 6.7, NCR will not be required to pay more than the Total Settlement Amount as a result of this Litigation.

**6.3** Within five (5) days from the date on which the Court enters an order dismissing this Litigation against NCR with prejudice, NCR shall engage, or shall cause to be engaged a Claims Administrator who will undertake the obligations set forth in this Agreement. The Claims Administrator will immediately set up a Qualified Settlement Fund. Within fifteen (15) days of its appointment, the Claims Administrator shall calculate Payroll Tax for each Plaintiff based on the schedule below and shall communicate to NCR the total Payroll Tax owed by NCR. Within ten (10) days of its receipt of the amount of the Payroll Tax owed by NCR, NCR shall deposit into the Qualified Settlement Fund, established and administrated by the Claims Administrator for the benefit of the Plaintiffs, (a) the Total Settlement Payment and (b) the Payroll Taxes. Within fifteen (15) days of receiving the payment from NCR into the Qualified Settlement Fund, the Claims Administrator will distribute from the Qualified Settlement Fund the Fee and Expense Award to Plaintiffs' Counsel, and the following Individual Settlement Payments to the each Plaintiff.

**6.4** All payments to Plaintiffs made pursuant to this Agreement shall be deemed to be paid to Plaintiffs solely in the year in which such payments actually are received by the plaintiff.

**6.5** Attorneys' Fees. The Fee and Expense Award, which shall be made payable to Plaintiffs' counsel, MORGAN & MORGAN, P.A., constitutes payment of Plaintiffs' attorneys' fees and costs for Plaintiffs' claims and therefore falls within the definitions of 26 U.S.C. §§ 62(e)(4), (e)(18)(ii) and is subject to the provisions of 26 U.S.C. § 62(a)(20) of the Internal Revenue Code. This sum shall be paid without any deduction for taxes or other withholdings and reported in box # 14 on IRS Form 1099-MISC. The Claims Administrator will issue to Morgan & Morgan, P.A. IRS Forms 1099 with respect to their awarded attorneys' fees and costs.

Plaintiffs agree that, except as otherwise provided in this Section, each Party will bear its own attorneys' fees and costs incurred as a result of or related to the Litigation, and no Party owes another any fees or costs.

**6.6** Taxability of Settlement Payments.

a. For Settlement purposes, 50% of the payment to each Plaintiff identified in Exhibit A above shall be allocated as back wages and shall constitute the entire amount payable to that Plaintiff for his/her Released Claims, as that term is defined in Section 8, including payment for any alleged unpaid wages (including overtime compensation) he or she may have sought in the Lawsuit. The remaining 50% shall be treated as liquidated damages, penalties, interest, and other non-wage recovery.

b. Payments allocated as back wages pursuant to Section 6.6(a) shall be made by the Claims Administrator to each Plaintiff net of all applicable employment

4

taxes, including, without limitation federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported by the Claims Administrator to the Internal Revenue Service ("IRS") and/or state taxing authority and the payee under the payee's name and social security number on an IRS form W-2. Payments allocated as liquidated damages, penalties, interest, and other non-wage recovery pursuant to Section 6.6(a) shall be made without withholding and shall be reported to the IRS and/or state taxing authority and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 6.5 shall be made without withholding, but may, where required by law, be reported on an IRS Form 1099. The Claims Administrator shall be responsible for the payment of all payroll and other taxes to the IRS and or state taxing authority and for issuing tax documentation to Plaintiffs.

**6.7**   NCR shall pay the Claims Administrator the Payroll Taxes as set for herein. The employee portion of all applicable payroll taxes is not NCR's responsibility and is the responsibility of the individual Plaintiff receiving a settlement check. Any tax responsibility for the non-wage portion of the payments to Plaintiffs or their counsel is not NCR's responsibility.

**6.8**   Neither Plaintiffs' Counsel nor NCR's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such. Plaintiffs agree to indemnify and hold NCR harmless with respect to any taxes, interest, cost, penalties, or expense related to those portions of the Total Settlement Amount, unless such liability is caused by a wrongful action or inaction of NCR. NCR makes no warranty or representation to the Plaintiffs or their attorneys regarding the tax consequences of these payments.

7. **Notice Procedure.**

   **7.1** The Payment to Plaintiffs will be accompanied by a notice that is mutually agreed to by the Parties and substantially in a form that is attached hereto as Exhibit B.

   **7.2** The Claims Administrator shall undertake a reasonable address verification measure to ascertain the current accuracy of the last known address of each Plaintiff. To the extent this process yields an updated address, the Claims Administrator shall attempt an additional mailing.

   **7.3** The Claims Administrator shall use reasonable efforts to make an additional mailing to Plaintiffs whose checks are returned because of incorrect addresses.

   **7.4** Plaintiffs will have 90 calendar days after their check date to redeem their Individual Settlement Payment. Fourteen calendar days before the end of the 90 day period, the Claims Administrator shall provide a list to Plaintiffs' Counsel and NCR's Counsel of the names of the Plaintiffs who have not redeemed their settlement payments. If Plaintiffs do not redeem their settlement payment checks within the 90 day period, their settlement checks will be void. If a Plaintiff alerts Plaintiffs' Counsel or the Claims Administrator during the 90-day period to redeem settlement payments that he or she has not received

his or her settlement check, the Claims Administrator will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the Plaintiff's original settlement check and reissue that Plaintiff's settlement check. All such reissued checks will be valid for 45 days after the date of issue and will be void thereafter. The cost of the stop payment will come from the Qualified Settlement Fund.

7.5  If a Plaintiff fails to redeem his or her settlement check as set forth in Section 7.4 above, their portion of the Net Settlement Proceeds will revert to NCR. Plaintiffs acknowledge that they are bound by the terms of this Agreement regardless of whether they redeem their respective settlement checks, and their failure to do so will have no effect on the validity or enforceability of the terms of this Agreement.

8. **Release of Claims.**  Upon approval by the Court of the Settlement, Plaintiffs fully and completely waive, release, and forever discharge NCR and its successors, divisions, subsidiaries, and parents, and, collectively, their respective former, current, and future members, directors, officers, employees, affiliates, agents, representatives, assigns, heirs, and executors (collectively the "Released Parties"), from any and all claims, charges, complaints, actions, causes of action, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, statutory, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description, or character whatsoever that Plaintiffs have or may have against any or all of the Released Parties up to and including the date that the Court approves the Settlement, whether known or unknown, contingent, suspected, or concealed, and whether presently asserted or otherwise related to (a) the claims asserted in or which could have been asserted in the Litigation; (b) claims that NCR failed to properly provide Plaintiffs minimum wage or overtime compensation, retaliated against them under the FLSA or any state wage hour law, or in any other way violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (and/or the Portal to Portal Act, as amended, 29 U.S.C. § 251 et seq.), or any other applicable city, local, state, or federal laws, statutes, ordinances, executive orders, regulations, or constitutions concerning the payment of wages or expenses; or (c) the conduct of settlement negotiations resulting in this Agreement (excluding any obligations under this Agreement) (the "Released Claims").

9. **Covenant Not to Sue.**  A "covenant not to sue" is a legal term, which means that a party promises not to file a lawsuit against another in court. It is different than the general releases contained in Section 8. In further exchange for the consideration described herein, Plaintiffs agree never to sue any of the Released Parties in any forum for any of the Released Claims. Plaintiffs also agree that they will not join or consent to opt into any certified or conditionally-certified class or collective action, or any other multi-party litigation, against any of the Released Parties involving any of the Released Claims. Likewise, Plaintiffs agree that they will opt-out or otherwise withdraw from any such litigation to which they become a member or participant. If it is determined by a court of competent jurisdiction that Plaintiffs violated this Agreement by suing any of the Released Parties in violation of this Section 9, the prevailing party in any such action

6

shall be entitled to reasonable attorneys' fees and other costs incurred in the lawsuit. Alternatively, if a Plaintiff knowingly sues any of the Released Parties in violation of this Section 9, that respective Plaintiff may be required, at the Released Parties' option, to return all but One Hundred Dollars ($100.00) of the consideration paid to that respective Plaintiff pursuant to this Agreement, which amount Plaintiffs expressly acknowledge constitutes good and valuable consideration for all of the promises and covenants in this Agreement. This Paragraph shall not apply if Plaintiffs sue to enforce the terms of this Agreement.

10. **Non-Assistance.** Subject to Section 13 of this Agreement, Plaintiffs acknowledge and agree that they will not voluntarily assist, aid, encourage, or cooperate with any other person or entity in threatening, commencing, instituting, maintaining, litigating, or prosecuting any claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes or demands relating to the Released Claims that may exist against any of the Released Parties, except as required by court order, subpoena, or otherwise by law. If it is determined by a court of competent jurisdiction that any Plaintiff violates this Section 10, Sections 8 and 9 will remain in full effect, but that Plaintiff will be required to return all but One Hundred Dollars ($100.00) of the consideration paid to them pursuant to this Agreement, which amount Plaintiffs expressly acknowledge constitutes good and valuable consideration for all of the promises and covenants in this Agreement.

11. **Confidentiality.**

    **11.1** Except as required by law, Plaintiffs shall not, directly or indirectly, disclose or authorize anyone to disclose the fact or terms of this Agreement or the negotiations leading to this Agreement, and shall not comment on or characterize the fact or terms of this Agreement, including the fact or amount of any payments made hereunder, except that they may disclose the nature and amount of such payments to their spouse, attorneys, tax consultants and/or financial advisors, whom Plaintiffs shall instruct to keep such information strictly confidential. If asked about the Litigation or the dispute with NCR, Plaintiffs shall state that "the matter has been resolved" and nothing further. These restrictions shall be applicable to Plaintiffs even if this Agreement is filed on the Court's public docket and/or receives media coverage. Nothing in this Agreement is intended to prohibit Plaintiffs from providing truthful information about their relationship with NCR in response to a formal request from a governmental entity of competent jurisdiction or pursuant to a duly issued subpoena or other formal process; notwithstanding the foregoing, nothing in this Agreement prevents Plaintiffs from discussing the fact that they were employed by Field Solutions or their duties during their employment with Field Solutions while performing work for NCR for purposes of seeking other employment. Likewise, Plaintiffs' Counsel will not publish the Settlement, nor take any of the following actions that publish the settlement: issue any press release, hold any press conference, post on any website, social media site or blog posting, send solicitations or engage in other advertisement or marketing, author any articles that discuss or mention the Settlement. In the event of any breach of this paragraph by Plaintiffs, the prevailing party in a civil action to enforce the confidentiality provision of this Agreement shall be entitled to all reasonable costs and attorneys' fees. The Parties hereby consent to the

7

jurisdiction of the United States District Court Northern District of Georgia for any such action.

**11.2** Plaintiffs and Plaintiffs' Counsel agree that they will destroy all confidential documents and information along with personal information provided to them by NCR within thirty (30) calendar days from the entry of the order dismissing the Litigation against NCR with prejudice, except for documents that must be saved by Plaintiffs' Counsel for malpractice purposes. Plaintiffs and Plaintiffs' Counsel further agree that none of the documents and information provided to them by NCR have been or shall be used for any purpose other than prosecution of this Litigation or the defense or prosecution of a malpractice action.

12. **Other Agreements by Plaintiffs.** The Plaintiffs who have signed this Agreement represent and warrant that they are authorized to bind Plaintiffs to this Agreement. Plaintiffs acknowledge and agree that they:

   a. are waiving their right to participate in any class or collective action against NCR for the Released Claims;

   b. have been paid in full by NCR for all work performed for NCR's benefit;

   c. have not transferred or assigned, or purported to assign or transfer, to any person or entity, any interest or claim in this Litigation, or any portion thereof; and

   d. have not relied on any inducements, promises, or representations by NCR, other than the terms and conditions set forth in the Settlement Agreement.

13. **Testimony to Agencies.** Nothing in this Agreement is intended to or shall prevent, impede, or interfere with Plaintiffs' providing truthful testimony and information in the course of an investigation or proceeding authorized or required by law and/or conducted by an Agency of the United States or other any state or local agency.

14. **Severability.** The Parties agree that if any phrase, clause, or provision of this Agreement is declared to be illegal, invalid, or unenforceable by a court of competent jurisdiction, such phrase, clause, or provision shall be deemed severed from this Agreement, but will not affect any other provisions of this Agreement, which shall otherwise remain in full force and effect. If any phrase, clause, or provision in this Agreement is deemed to be unreasonable, onerous, or unduly restrictive by a court of competent jurisdiction, it shall not be stricken in its entirety and held totally void and unenforceable, but shall remain effective to the maximum extent permissible within reasonable bounds. If any waiver, release, or covenant not to sue set forth in this Agreement is deemed illegal, invalid, or unenforceable, in whole or in part, NCR's obligations under this Agreement shall be nullified.

15. **Continuing Jurisdiction.** Nothing in this Agreement is intended to limit the Court's authority to retain continuing and exclusive jurisdiction over the Parties, to administer and enforce this Agreement.

16. **Captions.** The captions or headings of the sections of this Agreement have been inserted for convenience only and shall have no effect on the construction or interpretation of any part of this Agreement.

17. **Dispute Resolution; Interpretation of Agreement.** The Parties intend for any disputes regarding this Agreement to be heard only by the Court, unless the Court declines jurisdiction to resolve such disputes. The Parties further agree that this Agreement shall be interpreted and construed in accordance with the laws of the State of Georgia, regardless of its conflict of laws provisions.

18. **No Mistake of Fact.** Each party hereto has made such investigation of the facts pertaining this Agreement as such party deems necessary, and in entering into this Agreement, each party hereto assumes the risk of mistake with respect to such facts. This Agreement is intended to be final and binding upon all of the Parties hereto regardless of any claims of mistake.

19. **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees in bankruptcy, attorneys, and assigns.

20. **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

21. **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

22. **Entire Agreement.** This Agreement constitutes the entire agreement of the Parties concerning the subjects addressed herein. This Agreement may not be changed or altered, except in writing, signed by all Parties.

23. **Execution in Counterparts.** The Parties agree that this Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Execution delivered by facsimile or electronic mail to the Parties' counsel of record shall be deemed effective as if executed in original.

The Parties have read and understand this entire Agreement.

_____
Christopher Spangler (on behalf of Plaintiffs)

Date: 02/22/2016

_____
Morgan & Morgan, P.A.

Date: 2/23/16

_____
NCR Corporation

By:_____

Title:_____

Date:_____

11

24683879v.1

_____
Christopher Spangler (on behalf of Plaintiffs)

Date:_____


_____
Morgan & Morgan, P.A.

Date:_____

_____
NCR Corporation
By: _Julie A. Hogan_____
Title: _VP North America Services_
Date: _2.22.16_____

24427356v.2